FILED - USDC -NH
2023 APR 26 PM4:02

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | 23-cr-36-PB-01 |
| v. ) | |
| ) | |
| **STEVEN POWELL** ) | |
| _____ ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Medicare Program

1.  The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.  Medicare was divided into four parts and covered specific benefits, items, and services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.  Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment, prosthetics,

orthotics, and supplies (collectively, "DME") that were ordered by licensed medical doctors or other qualified health care providers.

5. Physicians, clinics, laboratories, and other health care providers who provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. To receive Medicare reimbursement, providers had to complete an application and execute a written provider agreement, known as CMS Form 855. The application contained certifications that the provider agreed to abide by Medicare laws and regulations, and that the provider "[would] not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [would] not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

7. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for DME. SafeGuard Services LLC was the Unified Program Integrity Contractor for the state of New Hampshire, and as such, it was the Medicare contractor charged with investigating fraud, waste, and abuse.

**Durable Medical Equipment**

8. Medicare covered an individual's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces"). OTS braces required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

9.  A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment or diagnosis of the beneficiary's illness or injury and prescribed by a licensed physician. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and provider number of the provider who prescribed or ordered the equipment. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

10. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedure Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary," and reimbursement would be denied unless the ordering/referring physician documented the beneficiary's knee instability using an objective description of joint laxity determined through an examination of the beneficiary.

### Telemedicine

11. Telemedicine provided a means of connecting patients to doctors and other health care providers by using telecommunications technology to interact with a patient.

12. Telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. To generate revenue, telemedicine companies typically

either billed insurance or received payment from patients who used the services of the telemedicine company.

13. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that: (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility – not at a beneficiary's home – during the telemedicine consultation with a remote practitioner.

### The Defendant

14. Defendant STEVEN POWELL, a former resident of Grantham, New Hampshire, and current resident of Alpharetta, Georgia, was a physician licensed to practice in New Hampshire and elsewhere. STEVEN POWELL was a Medicare provider and was required to abide by all Medicare rules and regulations. STEVEN POWELL worked as an independent contractor for purported telemedicine staffing companies such as Company 1, which would connect medical practitioners with patients, as well as purported telemedicine companies such as Company 2, described below.

### Related Individuals and Entities

15. Company 1, a company known to the United States of America, was a Massachusetts company that operated as a purported telemedicine staffing company that did business throughout the United States.

16. Company 2, a company known to the United States of America, was a Florida company that operated as a purported telemedicine company that did business throughout the United States.

17.     J.K. was a Medicare beneficiary residing in the District of Rhode Island.

## COUNT 1
## 18 U.S.C. §§ 1347 and 2
## (Health Care Fraud)

18.     Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

19.     From in or around December 2018, and continuing through in or around February 2019, the exact dates being unknown to the United States of America, in the District of New Hampshire, and elsewhere, the defendant, STEVEN POWELL, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and other health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

### Purpose of the Scheme and Artifice

20.     It was a purpose of the scheme and artifice for STEVEN POWELL and his accomplices to unlawfully enrich themselves by: (a) submitting and causing the submission of false and fraudulent claims to Medicare that were (i) medically unnecessary, (ii) not eligible for Medicare reimbursement, and (iii) not provided as represented; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

## The Scheme and Artifice

21. On or about October 22, 2014, STEVEN POWELL certified to Medicare that he would comply with all Medicare rules and regulations. For all times during the charged period, STEVEN POWELL was a Medicare provider and was required to abide by all Medicare rules and regulations and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare.

22. Thereafter, STEVEN POWELL devised and engaged in a scheme to submit false and fraudulent claims to Medicare for: (a) DME that was not medically necessary; and (b) DME that was not eligible for reimbursement from Medicare.

23. STEVEN POWELL agreed with others at Company 1 and Company 2 to sign brace orders for Medicare beneficiaries in exchange for approximately $15 per order reviewed.

24. STEVEN POWELL received pre-filled unsigned prescriptions for DME for Medicare beneficiaries, from accomplices working on behalf of Company 1 and Company 2, for him to electronically sign.

25. STEVEN POWELL ordered braces that were medically unnecessary, for Medicare beneficiaries with whom he lacked a pre-existing medical practitioner-patient relationship, without a physical examination, and/or without communicating substantively with the Medicare beneficiary.

26. STEVEN POWELL and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of patient files, brace orders, and other records, all to support claims to Medicare for braces that were medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

27. Specifically, STEVEN POWELL: (a) falsely stated that he determined, through his assessment of the Medicare beneficiary, that a particular course of treatment, including the prescription of braces, was appropriate and medically necessary; (b) falsely attested that he was treating the Medicare beneficiary; (c) falsely attested that he had a valid prescriber-patient relationship with the Medicare beneficiary; and (d) concealed the fact that he never saw the beneficiaries face-to-face, and that he did not have any communication with most of the beneficiaries.

28. While in the District of New Hampshire, STEVEN POWELL electronically submitted orders for DME on behalf of Medicare beneficiaries, which caused DME suppliers to ship medically unnecessary DME to beneficiaries and to submit claims to Medicare for reimbursement.

29. From in or around December 2018, through in or around February 2019, STEVEN POWELL and others submitted and caused the submission of more than $1,900,000 in false and fraudulent claims to Medicare for DME that was ineligible for Medicare reimbursement because the DME was not medically necessary, not eligible for reimbursement, and not provided as represented. Medicare paid more than $760,000 on these claims.

### Acts in Execution of the Scheme and Artifice

30. On or about the date specified below, in the District of New Hampshire, and elsewhere, the defendant, STEVEN POWELL, aided and abetted by, and aiding and abetting, others known and unknown to the United States of America, submitted and caused to be submitted the following false and fraudulent claim to Medicare for DME that was, among other things, not legitimately prescribed, not needed, and not used, and in execution of the scheme as described in paragraphs 21 to 29:

| Count | Medicare Beneficiary | Approx. Date of Claim | Claim Number | Description of Devices Billed; HCPCS Code | Approx. Amount Billed |
|---|---|---|---|---|---|
| 1 | J.K. | 12/28/18 | 118365725186001 | Left knee brace (L1851); Suspension sleeve (L2397) | $1,173.27 |

In violation of Title 18, United States Code, Sections 1347 and 2.

JANE E. YOUNG
United States Attorney

Date: 4/24/2023

By: _____
Jay McCormack
John Kennedy
Assistant United States Attorneys

8